George L. RUIZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–94–194–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 3, 1995.

John A. George, Fly & Moeller, Victoria, for appellant.

George J. Filley, III, District Attorney, Daniel F. Gilliam, Asst. District Attorney, Victoria, for appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellant was charged by information with unlawfully carrying a handgun. Appellant filed a motion to suppress all evidence seized from or relating to a stop and search of his vehicle. The trial court denied the motion to suppress. After a bench trial, the trial court found him guilty and assessed punishment at a fine of $400 and forfeiture of the handgun. By five points of error, appellant complains that the trial court erred or abused its discretion by denying the motion to suppress. We affirm.

█ Viewing the evidence in the light most favorable to the verdict,[1] at approximately 1:45 a.m. or 2:00 a.m. on November 8, 1993, Karnes County Deputy Sheriff Roy Salas was traveling east in a marked car on the Houston Highway in Victoria County. Salas stopped in the eastbound inside lane at an intersection and saw a vehicle parked at the same intersection facing west in the eastbound outside lane. He saw the headlights facing him and described the vehicle as a small, four-door station wagon. The vehicle proceeded westbound, and Salas radioed the Victoria County Sheriff's Office that he had a possible drunk driver heading westbound in an eastbound lane. Salas turned around, activated his overhead lights and siren, and followed the vehicle. As the vehicle proceeded the wrong way down the Houston Highway, it passed two oncoming cars. The oncoming cars moved to the inside lane to avoid hitting it. Salas stopped the vehicle and asked the driver, appellant, to get out of the car. Salas patted him down and asked for identification. Victoria County Deputy Sheriff De La Rosa heard Salas' call that he had a possible DWI traveling on the wrong side of the road. De La Rosa arrived at the scene, and Salas turned appellant over to him. After that, Salas left. Salas testified that he stopped appellant for driving in the wrong lane, and because he believed that appellant was a drunk driver. He believed appellant was drunk because he was driving in the wrong lane. The stop occurred in Victoria County.

At the scene, De La Rosa asked appellant for identification and his point of origin. Appellant requested that De La Rosa call Chris Garcia. Appellant insisted that Garcia "could probably straighten all of this out." Thereafter, Victoria County Deputy Sheriff Brown arrived and looked through the vehicle's passenger-side window. He saw a blackjack in a pocket behind the front passenger seat. He seized the blackjack and then walked to the front of the vehicle. With the aid of a flashlight, Brown saw a derringer handgun lying on the front right side of the hump on the floorboard. Brown arrested appellant for unlawfully carrying a weapon. The trial court admitted the gun into evidence during the guilt/innocence phase.

Appellant testified that on the night in question, he had visited his father at a nursing home and then went to "Southern Nights" to play pool. He was going home when Salas stopped him. He denied that he was on the wrong side of the road. He testified that he was in the "turn lane." The State asked him, "Is it also your testimony that when you proceeded through that intersection you were on the right side of the highway?" Appellant answered affirmatively.

█ The trial judge is the sole trier of fact and judge of the credibility of the witnesses as well as the weight assigned to their testimony at a hearing on a motion to suppress. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Whitten v. State*, 828 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). On appeal, we do not engage in our own factual review[2] but decide whether the record supports the trial judge's fact findings. If the record supports the trial

---

1. When we review the validity of a warrantless search, we consider the evidence developed at the pretrial suppression hearing and the evidence developed in greater detail at trial. *McDole v. State*, 579 S.W.2d 7, 8 (Tex.Crim.App.1979); *Saenz v. State*, 670 S.W.2d 667, 671 n. 3 (Tex. App.—Corpus Christi 1984, pet. ref'd); *see also* *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App.1984).

2. Except in very narrow circumstances. *See* *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App. 1990).

court's fact findings, we are not at liberty to disturb them, and on appellate review, we address only the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Whitten,* 828 S.W.2d at 820. We view the evidence adduced at a suppression hearing in the light most favorable to the trial court's ruling in determining whether the trial court abused its discretion in denying the motion to suppress. *Whitten,* 828 S.W.2d at 820.

By his first point of error, appellant contends that the trial court abused its discretion by denying his motion to suppress because Officer Salas had no jurisdiction to make a warrantless misdemeanor arrest in Victoria County.

Texas statutory law governs a peace officer's authority to make a warrantless arrest. *Fry v. State,* 639 S.W.2d 463, 465 (Tex.Crim.App.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1430, 75 L.Ed.2d 790 (1983). The Code of Criminal Procedure authorizes few exceptions to the general requirement that a peace officer obtain a warrant before making an arrest. *Id.* at 465. One of these exceptions, article 14.01(a), provides as follows:

> A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

TEX.CODE CRIM.PROC.ANN. art. 14.01(a) (Vernon 1977).

In *Woods v. State,* 152 Tex.Crim. 338, 213 S.W.2d 685 (1948), the Court of Criminal Appeals held that the term "breach of the peace"

> is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community; a disturbance of the public tranquility by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet of the community. By "peace," as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns among its members. Breach of the peace is a common-law offense....
>
> The offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet, of an invasion of the security and protection which the laws afford to every citizen, or of acts such as tend to excite violent resentment or to provoke or excite others to break the peace. Actual or *threatened violence* is an essential element of a breach of the peace. Either one is sufficient to constitute the offense. Accordingly, where means which cause disquiet and disorder, and which *threaten danger and disaster to the community,* are used, it amounts to a breach of the peace, although no actual personal violence is employed.... (Emphasis added).

*Woods,* 213 S.W.2d at 687.

The factual situation in *Romo v. State,* 577 S.W.2d 251 (Tex.Crim.App.1979) is similar to the case before us. In *Romo,* Joe Weatherford was a Buffalo Springs Lake Patrol member whose jurisdiction did not extend beyond the lake patrol area of Buffalo Lake. He was driving to work in Lubbock when he encountered Domingo Romo, who was driving " 'erratically' " and at a high rate of speed. Romo approached him from the rear, and then passed in a way that forced his car into the curb in order to avoid a collision. Weatherford followed Romo. Romo was speeding and weaving across the center lane and onto the shoulder of the road. Romo reached the Slayton Highway, and Weatherford radioed the Texas Department of Public Safety (DPS). DPS Trooper Smith advised him to stay with Romo's car until he could arrive. Weatherford followed Romo for about two miles and clocked him at 90 miles an hour. Smith instructed him by radio to stop Romo in order to avoid an accident. Weatherford turned on the red lights of his vehicle, and Romo stopped. He noticed that Romo smelled strongly of alcohol and showed

signs of intoxication. A few minutes later, Smith arrived at the scene.

The issue was whether Weatherford had authority to arrest Romo. The Court of Criminal Appeals restated its prior holding in *Heck v. State*, 507 S.W.2d 737, 740 (Tex. Crim.App.1974), that "[b]eing drunk in a public place is a breach of the peace." *Romo*, 577 S.W.2d at 253. The court held that Romo was committing a breach of the peace and that article 14.01(a) authorized Weatherford to arrest him.

■ In the instant case, a breach of the peace ·occurred when appellant proceeded westbound in the eastbound outside lane of the Houston Highway, forcing two oncoming cars to move to the inside lane to avoid running into appellant's vehicle. Salas stopped appellant for driving westbound in the eastbound lane, and because he believed that appellant was a drunk driver. This type of conduct threatened danger and disaster to the community because appellant's act of driving in the wrong traffic lane placed his own life and the lives of other motorists in danger. We hold that appellant was committing a breach of the peace and that Salas was authorized to stop him. *See* TEX.CODE CRIM. PROC.ANN. art. 14.01(a) (Vernon 1977); *Romo*, 577 S.W.2d at 253. We overrule appellant's first point of error.

By his second point of error, appellant contends that the trial court abused its discretion by denying his motion to suppress the evidence because there was no probable cause to stop, detain, or arrest him, and any warrantless search of his vehicle and seizure of evidence pursuant to the stop was illegal.

■ A police officer may stop a motor vehicle when the driver is engaged in wrongdoing. *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Rodriguez v. State*, 776 S.W.2d 715, 716 (Tex.App.—Corpus Christi 1989, no pet.) (failure of driver to wear seat belt allowed officer to stop vehicle). Our state's traffic regulations provide that "[u]pon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway...." TEX.REV.CIV.STAT.ANN. art. 6701d § 52(a) (Vernon 1977).

■ Salas testified that he saw appellant driving westbound in the eastbound outside lane of the Houston Highway. At that point, he activated his overhead lights and siren and stopped appellant's vehicle. Under these facts, appellant was in violation of article 6701d, section 52(a), and Salas had probable cause to stop him for a violation of a traffic law. *See Cortez*, 449 U.S. at 418, 101 S.Ct. at 695; *Rodriguez*, 776 S.W.2d at 716. We hold that the trial court did not abuse its discretion by denying appellant's motion to suppress on this ground. We overrule appellant's second point of error.

■ By his third point of error, appellant contends that the trial court erred by denying his motion to suppress because any probable cause that Deputy Salas had for stopping and detaining him vanished when Salas determined that he was not intoxicated.

After Salas stopped appellant, he patted him down, asked for identification, and waited three or four minutes for other sheriff's deputies to arrive. Salas did not conduct any field sobriety tests on appellant and did not determine that appellant was not intoxicated. We overrule appellant's third point of error.

■ By his fourth point of error, appellant contends that the trial court erred by denying his motion to suppress because any probable cause that Deputy Salas had to stop him vanished when he departed the site of the stop, and appellant's continued detention by Deputies De La Rosa and Brown was based solely on hearsay information that he had committed a misdemeanor.

Salas testified that when he saw appellant driving in the wrong lane, he radioed the Victoria County Sheriff's Office that he had a possible drunk driver heading westbound in the eastbound lane of the Houston Highway. The State asked Deputy De La Rosa if he had any suspicion of appellant "being DWI?" De La Rosa replied, "There was some but we didn't get to—just the probable cause that where he was driving on the wrong side of the road, roadway." De La Rosa's testimony, as well as Salas' testimony about his report to the Victoria County Sheriff's Office, came into evidence without objection. In

*Chambers v. State,* 711 S.W.2d 240, 246 (Tex. Crim.App.1986), the court held that inadmissible hearsay has probative value, and a trial court should consider it in determining the sufficiency of the evidence. We hold that the trial court did not err when it considered these statements.

De La Rosa had information that appellant was driving on the wrong side of the road, and he had some suspicion that appellant was driving while intoxicated. This information gave him probable cause to detain appellant until he could determine whether appellant could drive safely. We overrule appellant's fourth point of error.

By his fifth point of error, appellant contends that the trial court erred by denying his motion to suppress because the search of the vehicle and the seizure of the weapon were both illegal because they resulted from an illegal detention. Appellant argues that this violated his rights under the Fourth Amendment to the United States Constitution and under Article 1, Section 9 of the Texas Constitution.

 The "plain view" doctrine lets an officer seize evidence without a warrant if the following two criteria are satisfied: 1) the officer's initial intrusion must be proper, in other words, the police have a right to be where they are when the discovery was made; and 2) it must be "immediately apparent" to the police that they have evidence before them (*i.e.,* probable cause to associate the property with criminal activity). *Horton v. California,* 496 U.S. 128, 137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *Haley v. State,* 811 S.W.2d 600, 603 (Tex.Crim.App. 1991).

In the instant case, the deputies' initial intrusion resulted from a proper stop of appellant's vehicle. Additionally, Deputy Brown's observation of a handgun on the vehicle's floorboard satisfied the "immediately apparent" requirement of the "plain view" doctrine. The fact that Brown shined a flashlight into the vehicle does not prevent the handgun from appearing in plain view. *Green v. State,* 866 S.W.2d 701, 705 (Tex. App.—Houston [1st Dist.] 1993, no pet.); *Griffin v. State,* 683 S.W.2d 16, 17–18 (Tex.

App.—Waco 1984, no pet.). We hold that the State properly seized the handgun from appellant's vehicle, and due to the proper seizure, the trial court did not abuse its discretion by denying the motion to suppress. We find no violation of appellant's rights under either the Fourth Amendment to the United States Constitution or Article 1, Section 9 of the Texas Constitution. We overrule appellant's fifth point of error.

We AFFIRM the trial court's judgment.