Opinion issued August 31, 2006






 



     





In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00114-CR




KRISTOPHER CALAMACO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 954689




MEMORANDUM OPINION
          A jury found appellant, Kristopher Calamaco, guilty of aggravated robbery and 
assessed punishment at 20 years in prison. In two points of error, appellant contends
that the trial court abused its discretion in denying his pretrial motion to suppress
unrecorded oral statements and DNA evidence. We affirm.
Background
          Cheryl Buckwalter and Walter Wadiak lived together at 3610 Fair Valley Road
in Harris County, Texas. In the early morning on July 10, 2003, two men burst into
the front door of their home holding guns and screaming at Buckwalter and Wadiak
to “hit the floor.” The men duct-taped their faces, eyes, hands, and ankles.
          Over the next several hours, the men went through the house collecting
valuables and weapons. Wadiak was a gun collector and had several unusual guns
and swords on display in the house. While the intruders were ransacking the house,
Wadiak was able to work his hands free from the duct tape. Once free, he noticed
that the intruders had missed a loaded shotgun that he kept behind the entertainment
center in the living room. Wadiak testified that he and the intruders exchanged
gunfire. He was shot by one of them in the chest near his heart. He testified that he
stuffed a washcloth in the hole made by the bullet, chambered another shell and
returned fire at the intruders. He struck one of the intruders and saw blood coming
from the intruder’s arm. Wadiak stated that the intruders continued to shoot over 20
rounds at him. He was struck again on his right side before the intruders fled. 
          Detective Valerio with the Harris County Sheriff’s Department responded to
the scene. After interviewing Buckwalter, Valerio testified that he was able to get a
description of the suspect’s vehicle: a dark extended cab pickup truck. Valerio
examined the scene and found that the front door showed damage consistent with a
forced entry. He noticed that much of the house had been ransacked and that there
was a lot of duct tape strewn through the house. 
          Wadiak testified that the intruders took a $7,000 wristwatch, a diamond ring,
and some gold chains that were never recovered. Several of his rifles were found
inside a green army duffel bag and another rifle and shotgun were found inside a
pillowcase on the kitchen floor. Also, an Astra nine-millimeter handgun was found
on the kitchen floor. This was the only gun in the house that did not belong to
Wadiak. Shell casings from that gun were found in the kitchen. A K-9 unit was
brought into the home to search for drugs, because many home invasions involve
drugs. However, no drugs were found in the home. Wadiak was taken to Ben Taub
hospital, where he remained for a week. 
          Detective Shipley, with the Harris County Sheriff’s Department homicide
division, was on her way to the scene when she received word that a shooting victim
had checked into the Northwest Medical Center. Shipley proceeded to the hospital
where she saw a dark extended cab pickup truck in the hospital parking lot. The
pickup matched the description of the truck seen leaving the scene of the robbery on
Fair Valley. Inside the hospital, Detective Shipley found appellant with a gunshot
wound to his left arm. 
          Detective Shipley began questioning appellant about his arm. He told her that
he was with a friend at a gas station in Houston and that several men drove up, started
a verbal altercation, and shot him. However, Shipley later determined that the store
at which appellant claimed to have been shot was closed at the time. Additionally,
Shipley testified that appellant changed his story as he retold it. At that point, Shipley
told appellant that she did not believe his story about being shot at the gas station. 
She read him his article 38.22 warnings,


 told him that she was investigating a
shooting in the county, and asked him if he knew anything about it. 
          Appellant admitted that he was involved in a shooting in the general area where
the robbery occurred. He denied being in the house, but said that he went to the
house with two other men. He claimed that the two men went into the house, but that
he stayed behind in the vehicle. Appellant told Shipley that he heard gunshots and
saw the homeowner come running out of the house and start shooting at his friends. 
He claimed that he inadvertently got shot during this exchange. The detectives never
found shell casings or other evidence of gunfire outside the home.
          Blood found in Wadiak’s kitchen and on the dining room wall was taken into
evidence. A warrant was obtained for appellant’s saliva for DNA testing. Two swabs
were taken from him, and the DNA from those swabs matched the blood samples
found in the kitchen of the home. Deputy Mills, a Harris County Sheriff’s Deputy in
the criminal identification division, testified at trial that appellant’s palm print
matched a palm print that was lifted off a piece of duct tape recovered from Wadiak’s
home. 
          Prior to trial, appellant filed a motion to suppress the oral statements he made
in the hospital and the DNA evidence extracted from him. The trial court held a
pretrial hearing on these motions during which both Detective Shipley and appellant
testified. At the conclusion of the testimony, the trial court denied appellant’s
motions to suppress.
Admission of Oral Statements
          In his first point of error, appellant contends that the trial court erred in failing
to suppress the unrecorded oral statements he made to Detective Shipley. He argues
that the oral statements were made involuntarily and as a result of the physical
condition he was in, the pain medications he was administered, and his reasonable
belief that he was undergoing a custodial interrogation.
Standard of Review
          A trial court’s ruling on a motion to suppress evidence will not be set aside
unless there is an abuse of discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); Taylor v. State, 945 S.W.2d 295, 297 (Tex. App.—Houston [1st
Dist.] 1997, pet. ref’d). We afford almost total deference to a trial court’s
determination of facts supported by the record, especially when the findings are based
on the evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997); Spight v. State, 76 S.W.3d 761, 765 (Tex. App.—Houston
[1st Dist.] 2002, no pet.). The appellate courts may review de novo “mixed questions
of law and fact” not falling within this category. Guzman, 955 S.W.2d at 89.
          Before trial, appellant moved to suppress the oral statements that the State
alleged appellant had made on the ground that any statements made by appellant were
not voluntary and were therefore, not admissible under articles 38.21 and 38.22
section 6 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann.
arts. 38.21, 38.22 § 6 (Vernon 2005) (statements be freely and voluntarily given and
an electronic recording be made of the statement in order for it to be admissible).
Statements Freely and Voluntarily Made
          Appellant complains that the oral statements he made to Detective Shipley
were not freely and voluntarily made without compulsion or persuasion. Article
38.21 reads:
A statement of an accused may be used in evidence against him if it
appears that the same was freely and voluntarily made without
compulsion or persuasion, under the rules hereafter prescribed.

Tex. Code Crim. Proc. Ann. art. 38.21(Vernon 2005). 

          Appellant notes that he was pale, had been administered pain medications
which “intoxicated” him, exhibited slurred speech, and had difficulty following
sentences. Thus, he argues, any statement, either oral or written, given by him or by
any person under these circumstances, would not constitute a statement that was
freely and voluntarily given. Appellant does not direct us to any case law that
supports his position. 
          At the hearing on the motion to suppress, Detective Shipley testified that, when
she arrived at the hospital, she spoke with appellant as he lay in the emergency room
hospital bed. She testified that she asked appellant what happened to him without
threatening him in any way. After appellant told her the story about being shot
outside a gas station, Detective Shipley told him that she did not believe his story and
proceeded to read him his article 38.22 warnings.


 When she asked him whether he
knew anything about the robbery in the north part of the county, appellant freely
admitted that he had been at that house. He told Shipley that the homeowner shot him
while chasing his friends from the house. Appellant and Shipley spoke for about 20
to 25 minutes before he began to complain that his arm was hurting. At this point,
Detective Shipley stopped the conversation with appellant.
          Appellant testified that, although he was in a lot of pain during his conversation
with Detective Shipley, he never told her that he was in too much pain to talk to her. 
He stated that he was awake, alert, and understood all of the questions that she asked
him. When asked whether he voluntarily talked with Shipley and whether he
answered her questions of his own free will, appellant answered “Yes, ma’am.”
          We reject appellant’s contention that his statements were not voluntarily or
freely given. The testimony in the record supports the trial court’s finding that
appellant’s statements were voluntary. We afford almost total deference to the trial
court’s determination based on credibility and demeanor. See Guzman, 955 S.W.2d
at 89; Spight, 76 S.W.3d at 765. Thus, we hold that the trial court did not abuse its
discretion in denying appellant’s motion to suppress. 
Custodial Interrogation
          Next, appellant argues that the trial court erred in denying his motion to
suppress because he reasonably believed that he was undergoing a custodial
interrogation. Appellant contends that he was in custody during Detective Shipley’s
questioning because he was physically deprived of his freedom of movement. He was
restrained in the emergency room hospital bed by the IV’s in his arm and was in
severe pain with a large caliber gunshot wound to his left arm. Accordingly, he
contends that any statements he made should have been electronically recorded as
required by article 38.22 section 3(a). Article 38.22 section 3(a) reads as follows:
          (a) No oral or sign language statement of an accused made as a result
of custodial interrogation shall be admissible against the accused
in a criminal proceeding unless:
 
(1) an electronic recording, which may include motion picture,
video tape, or other visual recording, is made of the
statement;
 
(2)prior to the statement but during the recording the accused
is given the warning in Subsection (a) of Section 2 above
and the accused knowingly, intelligently, and voluntarily
waives any rights set out in the warning;
 
(3) the recording device was capable of making an accurate
recording, the operator was competent, and the recording
is accurate and has not been altered;
 
(4) all voices on the recording are identified; and
 
(5) not later than the 20th day before the date of the
proceeding, the attorney representing the defendant is
provided with a true, complete, and accurate copy of all
recordings of the defendant made under this article. . .

Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a) (Vernon 2005). By its terms, article
38.22 section 3(a) applies only to statements that are made as a result of custodial
interrogation. Id. 
          The Texas Rules of Appellate Procedure require that, in order for an issue to
be preserved for appeal, there must be a timely objection, that specifically states the
legal basis for the objection. Tex. R. App. P. 33.1(a). It follows that an objection
stating one legal basis may not be used to support a different legal theory on appeal. 
See Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). Courts have
routinely held that, where a complaint on appeal does not comport with an objection
made at trial, the error is not preserved on the complaint. Goff v. State, 931 S.W.2d
537, 551 (Tex. Crim. App. 1996). An objection raised on appeal will not be
considered if it varies from the objection made at trial. Coffey v. State, 796 S.W.2d
175, 179 (Tex. Crim. App. 1990). 
          Here, appellant presents a different basis for suppressing his alleged oral
statements on appeal than was raised in the trial court. During the motion to suppress
hearing, appellant’s trial counsel stated: 
And my argument would be – and at this time I don’t think the Court has
decided whether or not anything, whether [appellant] was in custody or
not at the time any oral statement may have been given, but my
argument would be under Section 6, it’s not a requirement – if the Court
decides [appellant] wasn’t in custody for part of my motion, I don’t
think he is required to be in custody for the voluntariness issue to kick
in. 

His counsel further stated: “The Section 6 requirement of voluntariness, I do not
believe, and I would argue to the Court, it did not depend on whether a person’s in
custody or not.” Finally, appellant’s counsel closed with: “And for the purpose of
this hearing, we are raising the issue of voluntariness of the oral statement.” It is
clear from these statements that appellant was arguing that his oral statements to
Detective Shipley in the hospital should be suppressed because they were not
voluntary, and he contends that custody is not an issue relevant to his motion to
suppress. 
          On appeal, appellant argues that custody is an issue relevant to the suppression
of his oral statements and that the statements are inadmissible because they were
made during a custodial interrogation and were not electronically recorded, as
required by article 38.22 section 3(a). In his brief, appellant outlines the test for
determining whether an individual is in custody and argues that he was “in custody”
at the time he allegedly made the statements to Shipley. He concludes that the trial
court erred in failing to suppress the alleged oral statements because they were not
electronically recorded. See Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a).
          Because his complaint on appeal does not comport with his objections made
at trial, appellant has failed to preserve the issue of custodial interrogation for review. 
See Tex. R. App. P. 33.1.
          We overrule appellant’s first point of error.
Admission of DNA Evidence
          In his second point of error, appellant contends that the trial court erred in
failing to suppress DNA evidence extracted from him in the form of saliva swabs and
body hair because the evidence was the fruit of illegal police conduct. Specifically,
appellant argues that the affidavit used as support for the search warrant was
defective because (1) it was based solely on his inadmissible oral statements and (2)
it was conclusory.
          A warrant may be issued to search for and seize property or items that are
evidence of an offense or which tend to show that a particular person committed an
offense. See Tex. Code Crim. Proc. Ann. art. 18.02(1) (Vernon 2005). A search
warrant may not issue unless it is supported by an affidavit setting forth the following
sufficient facts to establish probable cause: (1) that a specific offense has been
committed; (2) that the specifically described property or items that are to be searched
or seized constitute evidence that an offense occurred or evidence that a particular
person committed that offense; and (3) that the property or items constituting
evidence to be searched for or seized are located at or on that particular person, place,
or thing to be searched. Tex. Code Crim. Proc. Ann. art. 18.01(c) (Vernon 2005).
          The information contained in the affidavit may be based on either direct
personal knowledge or hearsay information. Belton v. State, 900 S.W.2d 886, 893
(Tex. App.—El Paso 1995, pet. ref’d). We examine the four corners of the affidavit
to determine whether probable cause exists. Wilson v. State, 98 S.W.3d 265, 270-71
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). Allegations in an affidavit are
sufficient if they would “justify a conclusion that the object of the search is probably
on the premises.” Ramos v. State, 934 S.W.2d 358, 363 (Tex. Crim. App. 1996). The
magistrate is permitted to draw reasonable inferences from the facts and
circumstances alleged. Id.
          It is undisputed that support for the issuance of the search warrant came from
the affidavit of Detective Jones, investigator for the Harris County District Attorney’s
Office. Detective Jones’s affidavit supporting the issuance of the search warrant
entitled “Affiant’s Belief Is Basis (sic) Upon The Following Facts” reads in part:
Affiant is employed as an investigator with the Harris County
District Attorney’s Office. Affiant reviewed Harris County Sheriff’s
Department offense report No. 0307100234. This report was generated
by credible and reliable persons employed as deputies and detectives
with the Harris County Sheriff’s Department, who conducted an
investigation of an aggravated robbery of Cheryl Buckwalter,
complainant, which occurred on July 10, 2003 at 3610 Fairvalley Drive,
a location in Harris County, Tx. Affiant reviewed a statement taken
from witness, Walter Wadiak. Witness stated that while standing in the
doorway to the bedroom, he exchanged gunfire with the suspects who
were standing in the kitchen. Witness stated that he wounded at least
one of the suspects. During the crime scene processing, 10 blood swabs
were taken from the complainant’s residence, including 9 from the
kitchen area.
 
Approximately 3 hours after the aggravated robbery at the
complainant’s residence, defendant arrived at Northwest Memorial
Hermann Hospital with a gunshot wound to the arm. While at the
hospital, defendant admitted to being at the residence, but denied
involvement in the robbery.
 
Affiant contacted the Harris County Medical Examiner’s Office,
D.N.A. Laboratory, and was informed by Katie Welch that hairs were
recovered on several of the blood swabs submitted. Affiant knows that
blood and hair contain potential D.N.A. evidence that can be used for
comparison. 
 
Affiant believes that analyzing and comparing the DNA from the
defendant’s saliva and hair would constitute highly probative evidence
that the defendant committed the above-described offense of aggravated
robbery. . . .

          At the hearing on the motion to suppress, Detective Shipley testified that,
without appellant’s oral statements, she had no probable cause to arrest him. 
Incorporating his argument from point of error one, appellant contends that his oral
statements should not have been used to support the search warrant affidavit. He
argues that, without the oral statements, the affidavit’s remaining content is merely
hearsay and conclusory statements that are insufficient to establish probable cause to
arrest him or take DNA from him. 
          In this case, Detective Jones’s affidavit was based upon the police report
prepared by Detective Shipley. The report included the statements of the complaining
witnesses and of the medical examiner. One of the victims of the robbery, Walter
Wadiak, gave a statement that he exchanged gunfire with a suspect who was standing
in his kitchen and that he saw blood coming from one of the suspect’s arm. Detective
Shipley’s report indicated that appellant arrived at the hospital three hours after the
robbery and was suffering from a gunshot wound to the arm. A truck matching the
description of the vehicle used by the robbery suspects was parked in the hospital
parking lot, and appellant admitted that he was at the scene of the robbery. The
medical examiner told Detective Jones that the blood recovered from the scene of the
robbery contained hair samples. This evidence is sufficient to establish a belief that
appellant’s DNA could link him to the DNA evidence recovered at the scene of the
robbery. Thus, we hold that the facts alleged in Detective Jones’s affidavit provided
reasonable cause to grant a search warrant for appellant’s DNA.
          Appellant also claims that the affidavit was based upon his inadmissible oral
statements.  We have already held that appellant’s alleged oral statements were
admissible; however, even if they had been held to be inadmissible, they could still
be considered in making a determination of probable cause. See Brinegar v. U. S.,
338 U.S. 160, 174–75, 69 S. Ct. 1302, 1310 (1949) (admissibility of evidence is not
a factor in determining whether information provides probable cause to search or to
arrest); see also Ruiz v. State, 907 S.W.2d 600, 604–605 (Tex. App.—Corpus Christi
1995, no pet.) (holding that it was not error for a trial court to consider inadmissible
hearsay in determining probable cause); Johnson v. State, 751 S.W.2d 926, 929 (Tex.
App.—Houston [1st Dist.] 1988, pet. ref’d.). Moreover, information contained in an
affidavit may be based on either direct personal knowledge or hearsay information. 
See Belton, 900 S.W.2d at 893. 
          We hold that the affidavit supports the magistrate’s finding that there was
probable cause to issue a warrant for samples of appellant’s hair and saliva. Thus, the
trial court did not abuse its discretion by denying appellant’s motion to suppress the
DNA evidence. 
          We overrule appellant’s second point of error.Conclusion
          We affirm the judgment of the trial court.
           
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Nuchia, Keyes, and Hanks.
Do not publish. Tex. R. App. P. 47.4.