**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**SEALED JUVENILE 1, Defendant–**
**Appellant.**

**No. 00–40411.**

United States Court of Appeals,
Fifth Circuit.

June 20, 2001.

---

Timothy G. Hammer, Victoria, TX, James Lee Turner, Asst. U.S. Atty., Houston, TX, for Plaintiff–Appellee.

Eustorgio Charles Perez (argued), Office of Eustorgio Perez, Laredo, TX, for Defendant–Appellant.

Before KING, Chief Judge, and
EMILIO M. GARZA and PARKER,
Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This case presents the question of whether a United States Customs Service agent can detain someone for driving recklessly on the highway. We hold that a Customs agent enjoys the right of citizen's arrest if the erratic driving occurs in his presence and constitutes a breach of the peace under state law. Accordingly, we affirm the district court's denial of the motion to exclude incriminating evidence obtained as a result of the valid citizen's arrest.

I

Richard O. Rivera ("Rivera"), a senior special agent at the Falcon Heights, Texas office of the United States Customs Service, left work at around 9:00 PM. Driving an unmarked government-owned Jeep Cherokee, he headed home towards Laredo. Rivera considered himself "off-duty" because his work shift for the day had ended. He was wearing civilian clothes at the time.

Thirty minutes into his trip back home, Rivera observed a pickup truck exit off a ranch road and turn north onto Highway 83, a two-lane road with one lane in either direction. After several miles, the pickup truck passed Rivera's car and began driving erratically. Over the course of the next seven or eight minutes, Rivera saw the truck repeatedly cross the center stripe, veer back into the proper lane, and then drive onto the emergency shoulder. At one point, the pickup truck swerved entirely into the wrong lane and flashed its high-beam lights at an oncoming car. In response, the oncoming vehicle flashed its high-beam lights, blinding Rivera.

Although Rivera's official duties as a Customs agent do not include the enforcement of traffic laws, he decided to stop the pickup truck for his own safety as well as that of other drivers on the highway. Using the radio in his car, he gave his location and informed the Customs Service of his plan to stop the pickup truck. Rivera's unmarked government car did not come equipped with red-and-blue emergency lights, but it had headlights capable of a strobe light effect and an audio siren. He turned on both the strobe lights and the audio siren. The driver of the truck responded by accelerating to approximately 85–miles–per–hour. Rivera contacted Customs Service again to request the assistance of the Laredo Police Department. The chase ended when the pickup truck turned right onto a dead-end street. The driver of the pickup truck was a juvenile female ("Sealed Juvenile Defendant"). A search of the bed of the pickup truck revealed over 323 kilograms (711 pounds) of cocaine. The parties stipulate that the cocaine was the defendant's, and that she had intended to distribute it.

The Sealed Juvenile Defendant was charged with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). She filed a motion to suppress the evidence of cocaine, alleging that Rivera's pursuit and detainment of her constituted an unconstitutional arrest under the Fourth Amendment. The district court initially granted the motion to suppress on the ground that he lacked reasonable suspicion to stop the car. It rejected the government's contention that Rivera, as an off-duty Customs agent, acted as a private citizen. The court said that his use of the flashing headlights, the audio siren, and the radio in a government-owned car clothed his actions with the mantle of government authority.

The government offered several alternative arguments in its motion for reconsideration. After full briefing by both sides, the district court reconsidered its prior decision and granted the government's motion, thus denying the Sealed Juvenile Defendant's motion to suppress the evidence. The court maintained that Rivera was a government actor, but it held that Rivera's stopping of the pickup truck met constitutional muster. While Customs agents are not considered peace officers under Texas law, the district court said that they nevertheless have the right, under Texas' citizen's arrest statute, to stop anyone they see committing a felony or breaching the peace. The court opined that the erratic driving constituted an offense against the public peace. Alternatively, Rivera had a reasonable suspicion that the Sealed Juvenile Defendant was driving while intoxicated, which undeniably violates the public peace. The Sealed Juvenile Defendant appeals from the district court's grant of the motion for reconsideration.

## II

■ This court reviews de novo whether a search or seizure was reasonable under the Fourth Amendment, see *United States v. Jones*, 133 F.3d 358, 360 (5th Cir.1998), but accepts the district court's factual findings unless they are clearly erroneous. *See United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir.1998). Finding that Rivera properly exercised his right of citizen's arrest to detain the Sealed Juvenile Defendant, we affirm the district court's denial of her motion to exclude the evidence of cocaine.

## A

■ As a preliminary matter, we must briefly discuss whether Rivera's pursuit and detainment of the Sealed Juvenile Defendant implicates the Fourth Amendment. The United States Constitution's prohibition against unconstitutional search and seizure applies only to government agents. *See United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir.1998). Conversely, a private citizen's actions, even if wrongful, do not fall under the ambit of the Fourth Amendment. *See id.*

In both the original suppression hearing and in the motion for reconsideration, the government claimed (unsuccessfully) that Rivera had acted as a private citizen. On appeal, the government has abandoned this line of argument. We therefore assume that Rivera acted in his official capacity as a government agent for purposes of the Fourth Amendment. *See id.* at 1018 (noting that we are "constrained" by a party's decision not to raise a Fourth Amendment argument on appeal).

## B

■ The next question we address is whether any federal or state law empowered Rivera to stop and detain the Sealed Juvenile defendant. A law enforcement officer can make a warrantless arrest only if a federal or state law imbues him with that authority. *See generally Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (discussing an officer's authority to make a warrantless arrest). At oral argument, the government conceded that no federal statute gives a Customs agent the authority to arrest someone for a traffic violation. Under federal law, a Customs agent's power to arrest is limited to primarily violations of customs laws. *See United States v. Diezel*, 608 F.2d 204 (5th Cir.1979). As we explained in an earlier opinion, "[c]ustoms patrol officers are not, 'like local or state police, general guardians of the public peace'" with general arrest powers. *United States v. Rivera*, 595 F.2d 1095, 1097–98 (5th Cir.1979).

Given this lack of federal authority, the government must point to a Texas statute giving a Customs agent the power to arrest in this situation. *See United States v. Garcia,* 676 F.2d 1086, 1089 (5th Cir.1982), *vacated on other grounds,* 462 U.S. 1127, 103 S.Ct. 3105, 77 L.Ed.2d 1360 (1983) ("The legality of a warrantless arrest, absent a specific federal statute, is determined by state law."). Although Texas law holds that a "peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view," see TEX.CODE CRIM. PROC. ANN., art. 14.01(b) (Vernon 1977), it expressly states that a Customs agent is *not* a peace officer. *See* TEX.CODE CRIM. PROC. ANN., art. 2.122(a) (Vernon 1977 & Supp.2001) (listing several federal law enforcement officers who are not peace officers under Texas law). The government, however, claims that a Customs agent can rely on Texas' citizen's arrest statute, which allows a private citizen to arrest someone as long as he witnesses either a felony or a breach of the peace being committed. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(a) (Vernon 1977) ( "A peace officer or any other person, may, without a warrant, arrest an offender where the offense is a committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace"). The government maintains that the Sealed Juvenile Defendant's erratic driving constituted a breach of the peace under Texas law.

The Sealed Juvenile Defendant responds that a Customs agent does not enjoy the power of citizen's arrest, despite the plain language of the statute. *See* TEX.CODE CRIM. PROC. ANN. art. 14.01(a) (giving the power to a "peace officer or *any other person* ") (emphasis added). According to her, the citizen's arrest statute must be read in conjunction with TEX.CODE CRIM. PROC. ANN., art. 2.122(a), which states that

Customs agents, along with several other listed federal law enforcement agents, are not considered peace officers. In essence, she argues that the right of citizen's arrest is divested from a federal law enforcement officer acting in his official government capacity. We disagree.

■ Precedents in both our Circuit as well as in Texas state courts indicate that a Customs agent retains the power of citizen's arrest, even when he acts in his capacity as a government agent. In *Sanchez v. State,* 582 S.W.2d 813 (Tex.Crim. App.1979), two United States Border Patrol agents detained a person suspected of being inebriated. The defendant argued that the Border Patrol agents—who are not "peace officers" under TEX.CODE CRIM. PROC. ANN., art. 2.122(a)—could arrest someone only for immigration law violations. *See id.* at 814. The Texas Court of Criminal Appeals rejected that argument, holding that Border Patrol agents had the authority under Texas' citizen's arrest statute to detain the defendant. *See id.* at 815 ("A private citizen may, without a warrant, arrest a person found drunk in a public place.").

We similarly have held that "although Military Police [like Customs agents] are not designated peace officers ... they can make an arrest when Texas law authorizes such an arrest by a 'private person.' " *United States v. Mullin,* 178 F.3d 334, 338 (5th Cir.1999). We also have said that federal Secret Service agents "can make an arrest when Texas law authorizes such an arrest by a 'private person.' " *United States v. Johnson,* 815 F.2d 309, 313 (5th Cir.1987). *See also Garcia,* 676 F.2d at 1093 n. 22 (stating in dicta that "[o]f course, an employee of the Parks and Wildlife may, like any other private citizen, effect a citizen's arrest").

Indeed, it would be counter-intuitive to deny the right of citizen's arrest to a citizen who happens to be a federal law enforcement officer. If we adopted the Sealed Juvenile Defendant's reading of the statute, it would lead to absurd results: a federal agent who witnesses a felony or a breach of the peace would remain helpless to stop the offender, but a private citizen without any law enforcement background could pursue a fleeing felon. *Cf. State v. Gustke*, 205 W.Va. 72, 516 S.E.2d 283, 293 (1999) (describing such a rule as "ridiculous").

### C

We finally reach the question of whether Rivera's arrest of the Sealed Juvenile Defendant conformed with the requirements of the citizen's arrest statute. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(a) (requiring the arresting person to have witnessed a felony or a breach of the peace). The district court found that the Sealed Juvenile Defendant's erratic driving constituted a breach of the peace.

Texas courts have said the term "breach of the peace" is "generic, and includes all violations of the public peace or order, or decorum.... Accordingly, where means which cause disquiet and disorder, and which threaten danger and disaster to the community are used, it amounts to a breach of the peace, although no actual personal violence is employed." *Ruiz v. State*, 907 S.W.2d 600, 603 (Tex. App.-Corpus Christi 1995). The determination of whether an act constitutes a breach of the peace involves a case-by-case analysis, "looking to the facts and circumstances surrounding the act." *Turner v. State*, 901 S.W.2d 767, 770 (Tex.App.- Houston [14th Dist.] 1995).

Traffic offenses *per se* do not qualify as a breach of the peace under Texas law. *See Perkins v. State*, 771 S.W.2d 195, 197 (Tex.App.-Houston [1st Dist.] 1989) (finding no breach of peace when a car was speeding and "then sliding" through a red light at 3:30 in the morning). If, however, a traffic violation is egregious enough to threaten disaster and disorder or pose a potentially perilous public risk, it may constitute a breach of the peace. In *Ruiz*, a sheriff stopped the defendant after observing him drive his car westbound in the eastbound outside lane of the Houston Highway. *See* 907 S.W.2d at 604. The court found that the defendant's erratic and reckless driving constituted a breach of the peace. Similarly in this case, the Sealed Juvenile Defendant repeatedly crossed the center stripe separating the opposing traffic, and at one point, she had her entire truck in the wrong lane with her high beam lights flashing at an oncoming vehicle. This type of conduct constitutes a breach of the peace because "[the] act of driving in the wrong traffic lane placed [her] own life and the lives of the other motorists in danger." *Id.* at 604.

Texas courts have found a breach of the peace in situations where the defendant's actions were arguably less dangerous and noxious to the public. *See, e.g., Crowley v. State*, 842 S.W.2d 701, 704 (Tex.App.- Houston [1st Dist.] 1992) (finding that a driver who left a scene of an accident without providing insurance information breached the peace because she "invaded the security and protection to every citizen when she failed to stop and provide ... the information required by the statute"); *Hackett v. State*, 172 Tex.Crim. 414, 357 S.W.2d 391 (Tex.Crim.App.1962) (finding a breach of the peace when the defendant from his car threw out a 7-up bottle, which struck a police officer's car).

### D

The Sealed Juvenile Defendant makes an alternative argument that Rivera did not intend to "arrest" her when he stopped the pickup truck, because he per-

sonally did not suspect, let alone have probable cause for, any criminal activity. Instead, she argues that Rivera only made a *Terry* investigative stop, pointing to Rivera's testimony that he merely wanted to stop and investigate if there was something wrong with the driver. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (allowing police officers to make an investigatory stop based on an articulable reasonable suspicion of criminal activity). She then argues that the alleged *Terry* detainment was illegal because Texas law does not allow private citizens to engage in such stops.[1] *See Garner*, 779 S.W.2d at 501 (stating that private citizens have the power of citizen's arrest, but do not have the power to make *Terry* investigative stops).

■ This argument fails for two reasons. First, although Rivera mentioned that he stopped the pickup truck in part to investigate if there was something wrong with the driver, he also implicitly justified his decision on the breach of the public peace grounds when he testified that the "vehicle had become a hazard[ ] on the highway." Second, even if Rivera had intended to make only a *Terry* investigatory detention, his subjective rationale for stopping the pickup truck does not invalidate the detainment as long as there existed an objective probable cause for arresting the Sealed Juvenile Defendant. Simply put, we look beyond the mere subjective sentiment of the arresting officer or person in determining the legality of an arrest or a search. *See United States v. Gray*, 659 F.2d 1296, 1300 (5th Cir.1981). Courts have recognized that, "[i]nstead of [the police officer's] motive or intent, the court must view the circumstances objectively to determine whether they support the justification. Conceivably, the circumstances of a case could support more than one legal justification." *See Nickerson v. State*, 645 S.W.2d 888, 890 (Tex.App.-Dallas 1983).

In *Gray*, the police officer testified that he personally did not believe that he had probable cause to conduct a search, but the court found the search to be legal because there was an objective basis for probable cause to search. *See Gray*, 659 F.2d at 1300. Likewise in *Nickerson*, the police officer wrongly justified his search of a car on the inventory search rationale, but the court upheld the search because it found objective probable cause that contraband existed somewhere in the car. *See Nickerson*, 645 S.W.2d at 890. In this present case, Rivera had an objective basis for probable cause to pursue and stop the pickup truck once he witnessed the Sealed Juvenile Defendant commit a breach of the peace.

### III

We hold today that a United States Customs Service agent can invoke the power of citizen's arrest if he witnesses someone driving erratically and recklessly on the highway. We emphasize, however, that a Customs agent cannot detain someone who merely violates any traffic law. The traffic violation must threaten danger and disaster to the community, thereby breaching the public peace.

AFFIRMED.

---

1. To the extent that Texas law does not allow private citizens to make *Terry* investigative stops, we disagree with the district court's analysis that Rivera could have stopped the pickup truck on the alternative ground that he reasonably suspected that the driver was intoxicated. Erratic driving in itself does not amount to probable cause for driving under the influence; it only gives an officer an articulable reasonable suspicion to make an investigatory stop. *See Yeager v. State*, 23 S.W.3d 566 (Tex.App.–Waco 2000).